FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 1 7 2005

at 3 o'clock and 15 min. P
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ROBERT SOUZA, | ) | CV NO 04-00535 DAE-KSC |
| Plaintiff, | ) | |
| vs. | ) | |
| CITY AND COUNTY OF HONOLULU; HAROLD UYEHARA, in his individual and official capacity, ALLAN RIVERS, in his individual and official capacity; TWO UNKNOWN POLICE OFFICERS, in their individual and official capacity, JEREMY HARRIS, in his official capacity as Mayor; LEE DONAHUE, in his individual and official capacity as Police Chief; TAVERN 515, INC. d.b.a. CLUB YURAKUCHO, HARRY NAKAKI; JOHN AND JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and OTHER DOE ENTITIES 1-10, | ) | |
| Defendants. | ) | |

EXHIBIT "A"

OCT 1 8 2005

ORDER GRANTING DEFENDANTS TAVERN 515, INC.
d.b.a. CLUB YURAKUCHO AND HARRY NAKAKI'S
MOTION FOR SUMMARY JUDGMENT

The Court heard Defendants Tavern 515 d.b.a. Club Yurakucho and Harry Nakaki's Motion for Summary Judgment on October 17, 2005. Shawn A. Luiz, Esq., appeared at the hearing on behalf of Plaintiff; Paul T. Yamamura, Esq., appeared at the hearing on behalf of Defendants Tavern 515 d.b.a. Club Yurakucho and Harry Nakaki; Mona A. Yost, Deputy Corporation Counsel, appeared at the hearing on behalf of Defendants City and County of Honolulu and Alan Rivers. Defendants Lee Donohue and Jeremy Harris were previously dismissed from this case. No appearance was made by or on behalf of Defendant Harold Uyehara. After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS Defendants Tavern 515 d.b.a. Club Yurakucho and Harry Nakaki's Motion for Summary Judgment and dismisses them from this case.

BACKGROUND

Plaintiff, a former police officer, owns and operates his own cleaning and maintenance business. Defendant Tavern 515 d.b.a. Club Yurakucho ("Club Yurakucho" or the "Club") is owned by Defendant Harry Nakaki and is located in a facility that is cleaned and maintained by Plaintiff's business. Plaintiff also frequents the Club.

Plaintiff alleges that on August 12, 2003, he was assaulted, battered, and falsely imprisoned by Honolulu Police Sergeant Harold Uyehara and Officer Alan Rivers, as well as two unknown officers at Club Yurakucho. Specifically, Plaintiff alleges that when he entered Club Yurakucho shortly after 6:00 p.m. on August 11th he observed four officers at a table in the Club. One of those men, Defendant Harold Uyehara, allegedly asked Plaintiff if he had once been a police officer and Plaintiff replied that he had been. The four men indicated that they were police officers and Plaintiff believed that they were on duty. The other men at the table with Defendant Uyehara were Defendant Alan Rivers and the two unidentified officers. Plaintiff states that he observed Defendant Uyehara picking on the Caucasian officer, using profanity and racial epithets.

Plaintiff avers that the four officers exited the Club. Plaintiff then exited the Club to use the restroom, which is located outside of the Club. It appeared to Plaintiff that the officers were going to get into a fight and Plaintiff stood at the door of the Club to watch. Plaintiff states that Defendant Uyehara then shouted to Plaintiff in a challenging manner, asking him, "What?". Defendant Uyehara then allegedly charged Plaintiff, bumped him with his chest, and shoved him. Plaintiff claims that he then struck Defendant Uyehara and Defendant Uyehara tripped and fell down. Plaintiff contends that Defendant Rivers and the

3

unidentified officers grabbed him, began striking him, and pinned him against the wall. After asking to be let go, the officers allegedly allowed Plaintiff to go back into the Club.

Plaintiff asserts that an officer escorted him to the bar and stayed with him preventing him from leaving, while another officer continually entered and exited the bar. Plaintiff states that the Club's owner, Defendant Harry Nakaki, as well as a bartender and a patron, observed this. Then, while two officers flanked Plaintiff, Defendant Uyehara entered the Club, rushed toward Plaintiff and screamed obscenities. Plaintiff contends that two officers pinned his neck, arms, and legs against the bar and Defendant Uyehara struck him. Plaintiff states that a bartender and a patron saw him get hit.

Plaintiff states that he was then taken into the kitchen of the Club, with a swollen and bleeding lip. Plaintiff asked to leave, but the officers denied his request. Plaintiff then grabbed some ice for his lip. Plaintiff alleges that his injuries were obvious to the bartender and Defendant Nakaki. Several minutes later, after three of the four officers had departed, Plaintiff was allowed to leave. Plaintiff alleges that neither Defendant Nakaki nor any employee of the Club called 911 or rendered aid to him. Approximately one week later, Plaintiff returned to the

Club and Defendant Nakaki allegedly told him the names of two of the officers that were involved in the incident.

Defendants Club Yurakucho and Harry Nakaki (the "Club Defendants") state that after the four officers and Plaintiff exited the Club the first time, Mr. Nakaki heard a loud boom on the side of the wall and heard Officer Uyehara yell to Plaintiff "how come you false crack me?" The Club Defendants state that Plaintiff and Officer Rivers came back into the Club and Officer Uyehara also reentered the bar. The Club Defendants allege that Mr. Nakaki heard a verbal confrontation but that he saw no physical contact. The officers allegedly left and Plaintiff remained in the bar.

On September 3, 2004, Plaintiff filed his Complaint against the four police officers, the Club Defendants, the City and County of Honolulu, and others, pursuant to 42 U.S.C. §§1983, 1985 and 1986 for alleged violations of his Fourth, Sixth and Fourteenth Amendment rights. On July 26, 2005, the Club Defendants filed this instant motion for summary judgment arguing that Plaintiff has failed to prove that the Club Defendants acted under color of state law. Plaintiff filed his opposition on September 29, 2005, and the Club Defendants filed a reply on October 6, 2005. Defendants City and County of Honolulu, Alan Rivers, and Jeremy Harris filed a statement of no position on July 29, 2005.

## STANDARD OF REVIEW

> Rule 56 requires summary judgment to be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Porter v. Cal. Depot of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addis v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Chelates Corp. v. Citrate, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Chelates Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 383 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addis, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id. However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

The Club Defendants argue that Plaintiff's section 1983 claim against them should be dismissed since Plaintiff cannot prove that these private parties acted under color of state law. The statute provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. §1983. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) a deprivation of a constitutional right, and (2) that the deprivation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). A plaintiff may establish that a private individual or entity acted under color of state law by showing that the private party conspired with or

engaged in joint action with a state agent. Collins v. Womancare, 878 F.2d 1145, 1154 (9th Cir. 1989). Here, Plaintiff has made no allegations of a conspiracy between the Club Defendants and the police officers who allegedly assaulted, battered and imprisoned him.

Joint action exists where a private party is a willful participant in action by state agents. Id. There must be a substantial degree of cooperative action. Id. Indeed, "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant" in the alleged constitutional deprivation. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "Liability may be imposed if the defendant sets into motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Gini v. Las Vegas Metro. Police Dept., 40 F.3d 1041, 1044 (9th Cir. 1994) (citation and quotation marks omitted).

Here, although Plaintiff alleges that Mr. Nakaki was aware of his injuries, Plaintiff does not allege any involvement by the Club Defendants in the alleged assault, battery, and false imprisonment. Neither does Plaintiff allege that the Club Defendants ordered the assault and battery and false imprisonment or otherwise directed or set into motion the actions of the police officers. At most, Plaintiff alleges that a bartender at the Club saw him get hit by Officer Uyehara in

the bar and saw his bloody lip. Even if this were true and sufficient to be considered "willful involvement" by the bartender, there is no respondeat superior liability under §1983. Taylor, 880 F.2d at 1045. Therefore, the Club Defendants could not be held liable for actions that were witnessed by its bartender.

Plaintiff also makes a new allegation, which was not in his Complaint, that the Club Defendants are liable because they failed to render him aid and because they breached their duty to protect him from the reasonably foreseeable criminal acts of others. Even if it were true that the Club Defendants failed to render aid to Plaintiff and breached their duty to protect him, such allegations do not demonstrate that the Club Defendants acted under color of state law in doing so. Indeed, Plaintiff does not even allege that the police officers directed the Club Defendants to not aid Plaintiff or to allow them to allegedly assault Plaintiff. Accordingly, Plaintiff cannot prove that the Club Defendants acted under state law and his section 1983 claim against them is hereby dismissed.

Under 42 U.S.C. § 1985(3), a plaintiff may bring a civil cause of action where two or more persons conspire to deprive a person of the equal protection of the laws. 42 U.S.C. § 1986 provides a cause of action for certain failures to prevent violations of section 1985. As stated above, Plaintiff did not

even allege a conspiracy of any sort. Thus, Plaintiff's section 1985 and 1986 claims against the Club Defendants fail as a matter of law.

Accordingly, the Club Defendants' motion for summary judgment is GRANTED and the Club Defendants are dismissed from this case.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants Tavern 515 d.b.a. Club Yurakucho and Harry Nakaki's Motion for Summary Judgment and dismisses them from this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, OCT 1 7 2005

DAVID ALAN EZRA
CHIEF UNITED STATES DISTRICT JUDGE

Souza v. City and County of Honolulu, et al., CV No. 04-00535 DAE-KSC; ORDER GRANTING DEFENDANTS TAVERN 515, INC. d.b.a. CLUB YURAKUCHO AND HARRY NAKAKI'S MOTION FOR SUMMARY JUDGMENT