IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROBERT SOUZA, ) | Civil No. CV04 00535 DAE BMK |
| ) | (Other Civil Rights) |
| Plaintiff, ) | |
| ) | MEMORANDUM IN SUPPORT OF |
| vs. ) | MOTION |
| ) | |
| CITY AND COUNTY OF ) | |
| HONOLULU; HAROLD UEHARA, in ) | |
| his individual and official capacity, ) | |
| ALAN RIVERS, in his individual and ) | |
| official capacity; RICK S.Y. YI, in his ) | |
| individual and official capacity; ) | |
| AUGUST C. BELDEN, in his ) | |
| individual and official capacity, ) | |
| JEREMY HARRIS, in his official ) | |
| capacity as Mayor; LEE DONOHUE in ) | |
| his individual and official capacity as ) | |
| Police Chief; TAVERN 515, INC. d.b.a.) | |
| CLUB YURAKUCHO, ) | |
| HARRY NAKAKI; JOHN AND JANE ) | |
| DOES 1-10; DOE PARTNERSHIPS ) | |
| 1-10; DOE CORPORATIONS 1-10; ) | |
| and OTHER DOE ENTITIES 1-10, ) | |
| ) | |
| Defendants. ) | |
| ) | |

MEMORANDUM IN SUPPORT OF MOTION

I.    INTRODUCTION

On June 16, 2006, Plaintiff Robert Souza ("Plaintiff") filed his Second

Amended Complaint ("Complaint") alleging 42 U.S.C. § 1983 civil rights

violations by Defendants under the Fourth, Sixth and Fourteenth Amendments to

the Constitution of the United States.  <u>See</u> Exhibit "A," true and correct copy of Plaintiff's Second Amended Complaint for Declaratory Relief and Compensatory and Punitive Damages, at ¶¶ 2 and 3.

Plaintiff alleges that on August 13, 2003, he was at a Club Yurakucho and was involved in an altercation with Defendant police officers Harold Uehara, Alan Rivers, Rick S.Y. Yi and August C. Beldon, which, Plaintiff alleges, resulted in injuries to Plaintiff.  <u>See</u> Exhibit "A," generally.  Plaintiff alleges that the Defendant police officers assaulted, battered, and falsely imprisoned Plaintiff in violation of 42 U.S.C. § 1983.

Regarding the City, Plaintiff specifically alleges that the City "had a custom created by those who may fairly be said to determine official policy; that custom amounted to *at least deliberate indifference* to Plaintiff's constitutional rights; and that the custom was the moving force in his constitutional violation." Exhibit "A," ¶ 5.  (Emphasis added.)  Plaintiff also alleges that the City was deliberately indifferent to the "maintenance, training and control of its officers as shown by the customs, practices, policies and decision" of the City.  <u>Id</u>. at ¶ 6.  In his Complaint, Plaintiff asserts the following:

> 65.  Defendant City and County of Honolulu, as a matter of policy in practice, has failed to discipline, train, or otherwise sanctioned police officers who violate the rights of citizens, thus encouraging defendant officers in this case to engage in the unlawful and actionable conduct described above.

66.    Defendant City and County of Honolulu as a further matter of policy in practice, has failed to train properly its police officers, including defendant officers in this case, with respect to the constitutional, statutory, and departmental limits of their authority, thus causing police officers, including defendants to engage in the unlawful and questionable conduct outlined above.

67.    Defendant City and County of Honolulu, as a further matter of policy in practice, has failed both to establish appropriate procedures and to train its police officers so to which ensure [sic] that person [sic] in police custody (whether legal or not) to receive [sic] necessary medical care and to insure that person in said custody (whether legal or not) to protected [sic] from aggravation of existing medical or other physical conditions, thus creating further injuries to plaintiff and violating his rights.

Exhibit "A," ¶¶ 65 to 67.  Essentially, the allegations against the City amount to: 1) failing to train its police officers and 2) having an official policy that condones the violation of Plaintiff's civil rights.

## II.    STATEMENT OF MATERIAL FACTS

For purposes of this summary judgment motion only, the City assumes some facts in Plaintiff's Complaint as true.  On August 13, 2003, Defendants Harold Uehara, Alan Rivers, Rick S.Y. Yi, and August C. Beldon were sitting together at a table at Club Yurakucho ("the club").  Exhibit "A," ¶ 28.  Plaintiff entered the club and sat at the bar.  Id. at ¶ 28.  At some point during the evening, Defendants left the club, and shortly thereafter Plaintiff left the club.  Id. at ¶¶ 30 and 31.

At this point, there are varying accounts of what ensued in the parking lot of the club, and the City does not concede the facts as alleged by Plaintiff.  However,

for purposes of this summary judgment motion, the City recites the facts as alleged by Plaintiff.  Plaintiff alleges that that Defendants police officers assaulted, battered and falsely imprisoned him.  <u>See</u> Exhibit "A," generally.  Specifically, Plaintiff alleges that Defendant Uehara bumped up against Plaintiff's chest and struck him.  Exhibit "A," ¶ 31.  Plaintiff alleges that Defendants Rivers, Yi and Beldon grabbed Plaintiff had began assaulting him by striking him, elbowing him, kneeing him, and pinning him against the wall.  <u>Id</u>. at ¶ 32.  According to Plaintiff, those same Defendants restrained Plaintiff and continued to do so as Defendant Uehara struck Plaintiff.  <u>Id</u>. at ¶¶ 33 and 35.  Plaintiff alleges that Defendants refused to let Plaintiff leave the club.  <u>Id</u>. at ¶ 38.

III.    <u>STANDARD OF REVIEW</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered:

> …if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R.Civ. P. 56(c).  The moving party has the initial burden of establishing the absence of any genuine issues of material fact.  <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).  In determining whether a genuine issue of material facts exists, the evidence is to be taken in the light most favorable to the non-moving party.  <u>Id</u>. at 631.

There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  The mere existence of some factual dispute will not frustrate an otherwise proper summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Thus, the "preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed."  Id. at 251.

The moving party has the initial burden of "identifying for the Court those portions of the materials on file that it believes demonstrates the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc., 809 F.2d at 630.  However, the moving party need not produce evidence negating the existence of an element of which the opposing party will bear the burden of proof at trial.  Bynum v. Magno, 125 F.Supp. 2d 1249, 1253 (D.Haw. 2000).

Once the summary judgment movant satisfies his initial burden of showing the absence of any genuine issue of material fact, the burden shifts to the non-moving party to come forward with specific facts showing that there remains a genuine issue for trial.  Fed. R.Civ. P. 56(e).  The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence

tending to support its legal theory, nor can the opposing party simply stand on its

pleadings, or assert that it will be able to discredit the movant's evidence at trial.

T.W. Elec, Serv., Inc., 809 F.2d at 630; Fed. R.Civ. P. 56(e).

IV.    DISCUSSION

   A. Municipal Liability Under 42 U.S.C. § 1983

    Plaintiff's claims in his Complaint against the City appear to be based on

Section 1983.

    Section 1983 of Title 42 of the United States Code states:

    Every person who, under color of any statute, ordinance, regulation, custom,
    or usage, of any State or Territory or the District of Columbia, subjects, or
    causes to be subjected, any citizen of the United States or other person
    within the jurisdiction thereof to the deprivation of any rights, privileges, or
    immunities secured by the Constitution and laws, shall be liable to the party
    injured in an action at law, suit in equity, or other proper proceeding for
    redress . . .

42 U.S.C. § 1983.

    "Section 1983 does not create any substantive rights; rather it is a vehicle

whereby plaintiffs can challenge actions by governmental officials." Cholla Ready

Mix, Inc. v. Civish, 382 F.3d 969, 978 (9th Cir. 2004).  To state a Section 1983

claim, a "plaintiff must demonstrate a deprivation of a right secured by the

Constitution or laws of the United States, and that the defendant acted under color

of state law." Kirtley v. Rianey, 326 F.3d 1088, 1092 (9th Cir. 2003).

A municipality may be liable in a Section 1983 action under two theories. Generally, the municipality's alleged unconstitutional acts must implement or execute a "policy or custom that caused the plaintiff's injury." <u>McDonald v. City of Sunnyside</u>, 2007 WL 1223451, at *2 (E.D. Wash. April 23, 2007) (citing <u>Bd. of County Comm'rs of Bryan County, OK v. Brown</u>, 520 U.S. 397, 403 (1997)). In 'policy' cases, "[t]he official policy requirement is intended to distinguish acts of municipality from acts of employees of the municipality so that municipal liability is limited to actions for which the municipality is actually responsible." <u>Gausvik v. Perez</u>, 239 F.Supp. 2d 1047, 1053 (E.D. Wash. 2002) (citing <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 479-80 (1986)). The acts complained of must reflect "practices of . . . officials permanent and well-settled as to constitute a 'custom or usage' with the force of law." <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 691 (1978). "In 'custom' cases, liability is attributed through a policy maker's actual or constructive knowledge of and acquiescence in the unconstitutional custom or practice." <u>Gausvik</u>, 239 F.Supp. 2d at 1053 (citing <u>McNabola v. Chicago Transit Auth.</u>, 10 F.3d 501, 511 (7th Cir. 1993)).

A municipality can also be held liable under Section 1983 for failure to train, supervise, or discipline its employees. <u>Gausvik</u>, 239 F.Supp. 2d at 1053. "The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the constitutional rights of

persons with whom the police come into contact." <u>City of Canton v. Harris</u>, 489 U.S. 378, 387 (1989).  A plaintiff pursuing a 'failure to train' claim must show that:  (1) he was deprived of a constitutional right, (2) the City had a training policy that "'amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact"; and (3) his constitutional injury would have been avoided had the City properly trained those officers.  <u>See</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 681 (9th Cir. 2001) (quoting <u>City of Canton</u>, 489 U.S. at 388-89).  Evidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy.  <u>See</u> <u>Alexander v. City and County of San Francisco</u>, 29 F.3d 1367 (9th Cir. 1994) (absent evidence of a "program-wide inadequacy in training," any shortfall in a single officer's training "can only be classified as negligence on the part of the municipal defendant -- a much lower standard of fault than deliberate indifference.").

### 1.     Plaintiff's Failure to Train Claim

Plaintiff specifically alleges that the City failed to properly train the police officers, the direct and proximate cause of which Decedent sustained injuries.  <u>See</u> Exhibit "A," ¶¶ 65 to 67.

However, the City is not liable because there was no failure by the City to train its officers and there was no official policy or custom that condones the

alleged violation of Plaintiff's civil rights.  A § 1983 plaintiff cannot rely on a theory of *respondeat superior* to hold a city liable for the individual actions of its police officers.  Monell v. Department of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).  A municipality cannot be held liable "solely because it employs a tortfeasor."  Id.

Under § 1983, a municipality can only be held liable for an unconstitutional act of its police officer which was:  "(1) the direct result of inadequate police training or supervision; (2) the product of an officially adopted policy statement, ordinance, regulation or decision; or (3) illustrative of a custom which is so permanent and well[-]settled as to constitute a custom or usage with the force of law."  Sunn v. City & County of Honolulu, 852 F.Supp. 903, 909 (D.Haw. 1994), *citing* Tokuhama v. City and County of Honolulu, 751 F.Supp. 1385, 1389 (D.Haw. 1989).

A plaintiff pursuing a 'failure to train' claim must show that:  (1) he was deprived of a constitutional right, (2) the City had a training policy that "'amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact"; and (3) his constitutional injury would have been avoided had the City properly trained those officers.  See Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001) (quoting City of Canton, 489 U.S. at 388-89).  Evidence of the failure to train a single officer is

insufficient to establish a municipality's deliberate policy.  See Alexander v. City and County of San Francisco, 29 F.3d 1367 (9th Cir. 1994) (absent evidence of a "program-wide inadequacy in training," any shortfall in a single officer's training "can only be classified as negligence on the part of the municipal defendant -- a much lower standard of fault than deliberate indifference.").

Clearly, there is no evidence that the City had a training policy that "'amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact."  On the contrary, all police officers are trained to comport with the HPD policy with regard to the appropriate use of force.  See, Declaration of Fabian Loo attached hereto as Exhibit "B".  All police officers are trained and required to be familiar with all laws governing the use of force and are periodically apprised of, and trained in, developments in these laws.  Id.  The use of excessive force is a crime under Hawai'i law, and officers are trained to report other officers' misconduct.  Id.

Upon acceptance into the department, HPD recruits are required to undergo a Recruit Training Course at the Training Academy.  Said course places a heavy emphasis on training recruits in the appropriate use of force.  Id.  Specifically, each recruit must take an arrest and control tactics class whereby each recruit studies acceptable arrest techniques, and is instructed in methods that do not involve excessive force.  Id.

With regards to providing medical attention to prisoners, police officers are trained in the area of responding to prisoners' medical needs.  Id.   As a recruit, police officers are trained to administer basic first aid, CPR and the use of external defibulators.  Id.   This medical training is required every two years.  Id.   Further, police officers are trained to summon for an ambulance if requested or if the police officer believes it is necessary.  Id.

In addition to recruit training, each officer is required to attend annual recall training.  Id.   Annual recall training includes education in the area of use of force and arrest and control tactics.  Id.   It can also include medical care rendered to prisoners.

In the instant case, there is no evidence that the City was aware of, condoned, instituted or allowed to be instituted the infliction of physical injury on Plaintiff or that the City had a policy encouraging such conduct.  In order to prevail on this § 1983 cause of action against the City, Plaintiff must show that the alleged inadequate training "represents city policy," and that the failure to train amounts to "deliberate indifference" to the rights of the allegedly injured plaintiff.  City of Canton, 489 U.S. at 388-92, 109 S.Ct. at 1204-07.  Plaintiff must also show "evidence of supervisory indifference."  Turpin, 619 F.2d at 202.  Under the circumstances of this case, there is simply no evidence to support a conclusion that

the City failed to train its officers, or that such a failure resulted in Plaintiffs' injuries.

### 2. Plaintiff has not sufficiently alleged nor proven constitutional violations

#### a. Sixth Amendment of the United States Constitution

Plaintiff alleges that "[e]ach defendant, individually and in concert with the others, acted maliciously, wantonly, unlawfully, willingly, knowingly, and with specific intent to deprive plaintiff of his rights to freedom from seizure of [his] person, detention and imprisonment, all of which are secured to plaintiff[] by the Fourth, Sixth, and Fourteenth Amendment to the Constitution to the United States and by 42 USCA §§ 1983 and 1988." (Compl. ¶ 69.)

The Sixth Amendment of the United States Constitution provides the right to a speedy and public trial and to an impartial jury. Plaintiff has not made any allegations regarding any trial, conviction, or sentence. No allegation in Plaintiff's complaint supports a Sixth Amendment claim, nor does Plaintiff have any evidence of any trial, conviction, or sentence. This claim obviously lacks merit and Plaintiff cannot establish a Sixth Amendment claim against the City.

#### b. Fourteenth Amendment of the United States Constitution

Nor can the allegations in Plaintiff's Complaint be the basis for a Fourteenth Amendment due process claim. McKenzie v. City of Milpitas, 738 F.Supp. 1293, 1298 (N.D.Cal. 1990). ("Allegations of police use of excessive force prior to and

in the course of an arrest implicate Fourth Amendment rights, not substantive due process rights.").

Further, Plaintiff's Complaint fails to allege a Fourteenth Amendment equal protection claim. Plaintiff does not allege the City intentionally discriminated against Plaintiff. See Village of Willowbrook v. Olech, 120 S.Ct. 1073, 1074 (2000); Walker v. Woodford, 454 F.Supp. 2d 1007, 1017 (S.D.Cal. 2006) ("An equal protection claim under § 1983 must rely on allegations that Defendants acted with a discriminatory intent or purpose to discriminate against Plaintiffs"); Oluwa v. Secretary of State, 2006 WL 3147682, at *4 (E.D.Cal. Nov. 1, 2006) ("A plaintiff asserting a denial of equal protection must allege facts establishing a prime facie case of discrimination. See United States v. Estrada-Plata, 57 F.3d 757, 760 (9th Cir. 1995). To establish a prima facie case, the plaintiff must allege facts showing that the defendants acted with the intent to discriminate against him based on his membership in a protected class, see Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that he was treated differently from persons similarly situated, see [City of ] Cleburne, [Texas v. Cleburne Living Center], 473 U.S. [432, 439 (1985)]").

    c.      **Plaintiff's Fourth Amendment Claim Fails because the HPD Officers Involved in the Alleged Incident Were Not Acting as Police Officers at the Time of the Alleged Incident**

Plaintiff's 42 U.S.C. § 1983 claims cannot survive the instant motion for summary judgment because the HPD officers sued in this case were not acting under color of law when they allegedly assaulted Plaintiff.  In order for Plaintiff to properly plead a cause of action pursuant to 42 U.S.C. § 1983, he "must show that (1) a person acting under color of law (2) deprived him of his rights secured by the United States Constitution or its laws." Neuens v. City of Columbus, 303 F.3d 667, 670 (6th Cir. 2002) (citing O'Brien v. City of Grand Rapids, 23 F.3d 990, 995 (6th Cir. 1994)).  Here, the HPD officers who allegedly assaulted Plaintiff at the club were not acting under color of law.  Accordingly, Plaintiff's 42 U.S.C. § 1983 claims necessarily fail.

Whether a defendant acts under color of law is an issue of law, not an issue of fact. Neuens, 303 F.3d at 670.  The Neuens court stated that "[a]cts by police officers in the ambit of their personal, private pursuits fall outside [of] 42 U.S.C. § 1983." Neuens, 303 F.3d at 670 (quoting Stengel v. Belcher, 522 F.2d 438, 440 (6th Cir. 1975).  The officers in Neuens, like the officers in the instant case, were not in uniform, were not driving a police car, and did not display a badge to anyone, including Plaintiff, at the scene of the alleged incident.  Plaintiff has no evidence that the officers were doing anything other than enjoying a drink at a

private establishment while they were off duty pursuing purely personal activities.

Without evidence that the officers were acting under color of law, Plaintiff's

Fourth Amendment claims must fail.

V.    CONCLUSION

For the reasons set forth above, summary judgment should be granted in

favor of the City pursuant to Rule 56 of the Federal Rules of Civil Procedure.

DATED:  Honolulu, Hawai`i, October 16, 2007.

CARRIE K.S. OKINAGA
Corporation Counsel


By    /s/D. Scott Dodd
      D. SCOTT DODD
      Deputy Corporation Counsel

      Attorney for Defendant
      CITY AND COUNTY OF HONOLULU