IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROBERT SOUZA, | ) Civil No. CV04 00535 DAE BMK |
| | ) (Other Civil Rights) |
| Plaintiff, | ) |
| | ) MEMORANDUM IN SUPPORT OF |
| vs. | ) MOTION |
| | ) |
| CITY AND COUNTY OF HONOLULU; HAROLD UEHARA, in his individual and official capacity, ALAN RIVERS, in his individual and official capacity; RICK S.Y. YI, in his individual and official capacity; AUGUST C. BELDEN, in his individual and official capacity, JEREMY HARRIS, in his official capacity as Mayor; LEE DONOHUE in his individual and official capacity as Police Chief; TAVERN 515, INC. d.b.a. CLUB YURAKUCHO, HARRY NAKAKI; JOHN AND JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and OTHER DOE ENTITIES 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

MEMORANDUM IN SUPPORT OF MOTION

I.   INTRODUCTION

On June 16, 2006, Plaintiff Robert Souza ("Plaintiff") filed his Second Amended Complaint ("Complaint") alleging 42 U.S.C. § 1983 civil rights violations by Defendants under the Fourth, Sixth and Fourteenth Amendments to

the Constitution of the United States.  See Exhibit "A," true and correct copy of Plaintiff's Second Amended Complaint for Declaratory Relief and Compensatory and Punitive Damages ("Complaint"), at ¶¶ 2 and 3.

Plaintiff alleges that on August 13, 2003, he was at a Club Yurakucho and was involved in an altercation with Defendants Harold Uehara ("Uehara"), Alan Rivers ("Rivers"), Rick S.Y. Yi ("Yi") and August C. Beldon ("Belden"), which, Plaintiff alleges, resulted in injuries to Plaintiff.  See Exhibit "A," generally. Plaintiff alleges that the Defendant police officers assaulted, battered, and falsely imprisoned Plaintiff in violation of 42 U.S.C. § 1983.

With respect to Defendants Belden and Yi, Plaintiff's sole allegations include the following:

(1) Defendants, Rick S.Y. Yi, in his individual and official capacity; August C. Belden, in his individual and official capacity, and the above named defendants, were at all time mentioned employed police officers of defendant City and County of Honolulu and residents of the City and County of Honolulu.  Defendants are sued individually and in their official capacity.  Compl. at ¶ 15.

(2) On the date and at such time and location, Sergeant Harold Uehara and Officer Alan Rivers as well as Rick S.Y. Yi and August C. Belden, while in the scope of employment and without legal cause and justification violently assaulted and battered as well as falsely imprisoned plaintiff, Robert Souza.  Compl. at ¶ 23.

In addition to the claims set forth in Paragraph 23, Plaintiff sets forth the following specific claims against Defendant Rivers:

 (1) Defendant Honolulu Police Department officer Alan Rivers was and still is an employee of the Honolulu Police Department. He is sued in his individual and official capacity as a police officer. Compl. at ¶ 14.

 (2) …. [Plaintiff] was then grabbed by defendants Rivers and the as yet unidentified HPD members. These officers began assaulting [Plaintiff] by striking him, elbowing him, kneeing him and pinning him against the wall. Two police officers continued to restrain [Plaintiff] as they told him, "You cannot do that." Compl. at ¶ 32.[1]

 (3) The acts of these officers were intentional and under color of law. Compl. at ¶ 36.

 (4) On August 13, 2003 defendants under color of law and by virtue of their position in their official position, maliciously, unlawfully and without reasonable cause, falsely imprisoned plaintiff. First they held him and forbid (sic.) him to leave from the bar and then from the kitchen of the bar. Compl. at ¶ 59.

 (5) Plaintiff is informed, believes and upon such information and belief alleges that on or about August 13, 2003 these officers of the Honolulu Police Department assaulted, battered and falsely imprisoned plaintiff as described, all of which constituted assault as well as excessive, unjustifiable and unreasonable force in violation of 42 U.S.C. Section 1983. Compl. at ¶ 60.

The allegations in paragraphs 32, 33, 34 and 35 which refer only to "defendants" or "officers" or "police officers" are insufficiently specific to state a claim against Defendants Belden, Rivers, or Yi.

---

[1] Actually, it is unclear if this paragraph applies to Defendant Rivers; it appears that Souza's Complaint is stating that although Defendant Rivers "grabbed" Plaintiff, it was the as yet unidentified HPD members who assaulted Plaintiff by striking him, elbowing him, kneeing him and pinning him against the wall. Because the Complaint does not specify whether it was Defendant Rivers who was responsible for these actions, Defendant Rivers asks that the Court dismiss these allegations as against him.

For the reasons set forth below, Defendants Belden, Yi and Rivers respectfully request that this Honorable Court enter an order dismissing any and all claims for damages for any alleged constitutional violations, specifically those arising under 42 U.S.C. Section 1983, as the alleged acts were not performed under color of law.

II.     STATEMENT OF MATERIAL FACTS

Plaintiff alleges that on August 13, 2003, Defendants Uehara, Rivers, Yi, and Beldon were sitting together at a table at Club Yurakucho ("the club"). Exhibit "A," ¶ 28. Plaintiff entered the club and sat at the bar. Id. at ¶ 28. At some point during the evening, Defendants left the club, and shortly thereafter Plaintiff left the club. Id. at ¶¶ 30 and 31.

The Complaint generally alleges that Plaintiff was assaulted by the four named Defendants who were off-duty and enjoying a party at the club. On August 13, 2003, the individual Defendants had gone to Club Yuraku-Cho to celebrate a going away party for a fellow police officer who was leaving for Japan the following day. The party included the individual Defendants, as well as fellow police officers Jason Hendricks and Bienvenido Villaflor. See, Declarations of August C. Belden, Alan Rivers, and Rick Y.S. Yi.

Belden, Rivers and Yi all finished their work shifts between 9:00 p.m. and 9:45 p.m. Belden went straight to the club from work, and had taken off his police

4

uniform prior to arriving. Rivers and Yi went home prior to going to the club, and had showered and changed into civilian clothes prior to arriving at the club. None of the officers were on duty at the time they arrived at the club, nor at any time they were at the club. Each arrived at the club sometime after 10:00 p.m. See, Declarations of Belden, Rivers and Yi.

At some Uehara and Belden got into a heated discussion about work, and decided to take their conversation to the parking lot. Sometime after, Rivers and Yi decided it was time to leave and went outside to tell Uehara and Belden they were going home. Shortly after Rivers and Yi exited the club, Plaintiff followed them outside. Plaintiff made a comment to Uehara and Uehara made a statement to Plaintiff in effect to "mind your own business." Plaintiff then struck Uehara with a punch, and Uehara fell down. See, Declarations of Belden, Rivers and Yi.

Belden, Rivers and Yi separated Plaintiff and Uehara. Rivers took Plaintiff into the bar to get him away from Uehara to prevent a continuation or escalation of the altercation. Once the situation had calmed down sufficiently, Belden, Rivers and Yi left the club and went home. See, Declarations of Belden, Rivers and Yi.

II.   STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered:

> …if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

> affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R.Civ. P. 56(c). The moving party has the initial burden of establishing the absence of any genuine issues of material fact. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). In determining whether a genuine issue of material facts exists, the evidence is to be taken in the light most favorable to the non-moving party. Id. at 631.

There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The mere existence of some factual dispute will not frustrate an otherwise proper summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, the "preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed." Id. at 251.

The moving party has the initial burden of "identifying for the Court those portions of the materials on file that it believes demonstrates the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc., 809 F.2d at 630. However, the moving party need not produce evidence negating the existence of an element

of which the opposing party will bear the burden of proof at trial. Bynum v. Magno, 125 F.Supp. 2d 1249, 1253 (D.Haw. 2000).

Once the summary judgment movant satisfies his initial burden of showing the absence of any genuine issue of material fact, the burden shifts to the non-moving party to come forward with specific facts showing that there remains a genuine issue for trial. Fed. R.Civ. P. 56(e). The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory, nor can the opposing party simply stand on its pleadings, or assert that it will be able to discredit the movant's evidence at trial. T.W. Elec, Serv., Inc., 809 F.2d at 630; Fed. R.Civ. P. 56(e).

IV.   DISCUSSION

    **A.   Official Capacity Claims Against Belden, Rivers and Yi**

The claims against Belden, Rivers and Yi in their individual capacity should be dismissed because they are duplicative of the claims asserted against the City. It is well settled that "there is no longer a need to bring official-capacity actions against local government officials . . . local government units can be sued directly for damages and injunctive or declaratory relief." See Kentucky v. Graham, 473 U.S. 159, 167, n. 14, 105 S.Ct. 3099, 3106 (1985).

The Complaint sets forth claims against Belden, Rivers and Yi wherein they are being sued in their official capacity. These claims are merely claims against

7

the City.  Plaintiff's "official capacity" claims against Belden, Rivers and Yi should be dismissed as being duplicative of claims against the City.

**B.     Belden, Rivers and Yi Were Not Acting Under Color of Law**

Plaintiff's 42 U.S.C. § 1983 claims cannot survive the instant motion for summary judgment because the Belden, Rivers and Yi were not acting under color of law when they allegedly assaulted or falsely imprisoned Plaintiff.  In order for Plaintiff to properly plead a cause of action pursuant to 42 U.S.C. § 1983, he "must show that (1) a person acting under color of law (2) deprived him of his rights secured by the United States Constitution or its laws."  Neuens v. City of Columbus, 303 F.3d 667, 670 (6th Cir. 2002) (citing O'Brien v. City of Grand Rapids, 23 F.3d 990, 995 (6th Cir. 1994)).

In Huffman v. County of Los Angeles, 147 F.3d 1054 (9th Cir. 1998), the Ninth Circuit Court of Appeals addressed the issue of "color of law" with respect to an off-duty police officer who was involved in a fatal altercation in a bar.  The Court determined that the off-duty officer was not acting under color of law, stating the following:

> The Supreme Court has interpreted the phrase "under 'color' of law" to mean under 'pretense' of law.  A police officer's actions are under pretense of law *only if they are in some way 'related to the performance of his official duties.'*  By contrast, an officer who is pursuing his own goals and [i]s not in any was subject to control by [his public employer], does not act under color of law, unless he 'purport[s] or pretend[s]' to do so.  Officers who engage in

> confrontations for personal reasons unrelated to law enforcement, and do not purport or pretend to be officers, do not act under color of law.

Huffman, 147 F.3d at 1058 (emphasis added, internal citations omitted).

Here, the HPD officers who allegedly assaulted Plaintiff at the club were not acting under color of law. Accordingly, Plaintiff's 42 U.S.C. § 1983 claims necessarily fail.

Whether a defendant acts under color of law is an issue of law, not an issue of fact. Neuens, 303 F.3d at 670. The Neuens court stated that "[a]cts by police officers in the ambit of their personal, private pursuits fall outside [of] 42 U.S.C. § 1983." Neuens, 303 F.3d at 670 (quoting Stengel v. Belcher, 522 F.2d 438, 440 (6th Cir. 1975). Defendants Belden, Rivers and Yi, like the officers in Neuens, were not in uniform, were not driving a police car, and did not display a badge to anyone, including Plaintiff, at the scene of the alleged incident. Plaintiff has no evidence that the officers were doing anything other than enjoying a party with friends at a private establishment while they were off duty pursuing purely personal activities. Without evidence that the officers were acting under color of law, Plaintiff's Section 1983 claims against them must fail.

As demonstrated by the Declarations of Belden, Rivers and Yi, each of them were off duty and attending a social gathering for a friend who was leaving the country the following day. Neither Belden, Rivers nor Yi were in uniform. The

actions of Belden, Rivers and Yi at the club were not effectuated under color of law.

Further, whether a person is acting under "color of law" is a legal conclusion; Plaintiff's opinion or belief that Belden, Rivers or Yi were police officers is irrelevant to the Court's determination of whether they were acting under color of law at the club that night. In fact, Plaintiff testified he did not know whether they were on or off duty, and made no assumption whether they were on or off duty. See, Exhibit "B" at page 43-44.

### C. In the Alternative, if the Court Determines that Belden, Rivers and Yi Were Acting Under Color of Law, They Are Entitled to Qualified Immunity

If this Court determines that Defendants Belden, Rivers and Yi were acting under color of law, then they are entitled to qualified immunity.

The defense of qualified immunity protects § 1983 defendants from liability for civil damages when performing discretionary functions, unless such conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. *Jackson v. City of Bremerton*, 268 F.3d 646, 650 (9th Cir. 2001) (citing *Anderson v. Creighton*, 483 U.S. 635, 640,107 5. Ct. 3034 (1987)). Even more significantly, it is "an established constitutional or statutory right of which a reasonable person would have known." Jackson v. City of Bremerton, 268 F.3d 646, 650 (9th Cir. 2001) (citing Anderson v. Creighton, 483

U.S. 635, 640, 107 S. Ct. 3034 (1987)). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151, 2156 (2001) (quoting Mitchell v. Forsythe, 472 U.S. 511, 105 S. Ct. 2806 (1985).

*Saucier* sets out a two step inquiry for determining the applicability of qualified immunity. The court must first determine whether a constitutional right violated. If not, the immunity applies. If so, the court must determine whether the officer could reasonably, even if mistakenly, believe his or her conduct did not violate a clearly established constitutional right. *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001). *See Mukaida v. Hawaii*, 159 F. Supp. 2d 1211, 1237 (D. Haw. 2001).

As discussed below, Belden, Rivers and Yi are entitled to qualified immunity because there was no constitutional violation. In the alternative, Belden, Rivers and Yi are entitled to qualified immunity because they could have reasonably believed that their conduct did not violate a clearly established constitutional right.

In *Saucier*, the Supreme Court emphasized that the qualified immunity analysis is distinct from the merits of the excessive force claim. In considering the first step of *Saucier's* two-step qualified immunity inquiry, the Court must determine whether the plaintiff's constitutional right to be free from excessive force

was violated. *Jackson v. City of Bremerton*, 268 F.3d at 651 (citing and quoting from *Saucier* and *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865 (1989)).

In *Graham*, the Supreme Court held that all claims of excessive force in the context of arrests or investigatory stops should be analyzed under the Fourth Amendment's "objective reasonableness" standard. The court said:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... With respect to a claim of excessive force, the same standard of reasonableness at the moment applies; "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.

*Graham*, 490 U.S., at 396-97, 109 S. Ct. at 1872. *See Jackson v. City of Bremerton*, 268 F.3d at 651.

Ordinarily, the Court's inquiry is whether the totality of the circumstances justified the particular type of seizure. *Harris v. Roderick*, 126 F.3d 1189, 201 (9th Cir. 1997) (quoting *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). "While the test for reasonableness is often a question for the jury, this issue may be decided as a matter of law if, in resolving all factual disputes in favor of the plaintiff, the officer's force was 'objectively reasonable' under the circumstances." *Jackson*, 268 F.3d at 651 n. 1. *See Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

Here, the question is whether Belden, Rivers and Yi's conduct was "objectively reasonable" in light of the facts and circumstances confronting them. The standard of "reasonableness of the moment" applies. The reasonableness of their conduct must be judged under the totality of the circumstances from the perspective of a reasonable officer on the scene as the situation evolved on the evening of August 13, 2003. Belden, Rivers and Yi were faced with an altercation between an associate of theirs and another individual at a club. Under the circumstances presented to them, their actions in separating the two combatants were entirely reasonable, even in 20/20 hindsight. Belden, Rivers and Yi reasonably believed that the safety of Uehara was threatened, since Plaintiff had already thrown a punch and struck Uehara in the face.

Since Belden, Rivers and Yi's conduct was objectively reasonable under the circumstances, there was no violation of the Fourth Amendment. Given the absence of a constitutional violation, Belden, Rivers and Yi are entitled to qualified immunity and summary judgment in their favor.

//
//
//
//

V.   CONCLUSION

For the reasons set forth above, summary judgment should be granted in favor of the City pursuant to Rule 56 of the Federal Rules of Civil Procedure.

DATED:  Honolulu, Hawai`i, October 26, 2007.

                        CARRIE K.S. OKINAGA
                        Corporation Counsel


               By   /s/D. Scott Dodd
                        D. SCOTT DODD
                        Deputy Corporation Counsel

                        Attorney for Defendants
                        CITY AND COUNTY OF HONOLULU,
                        ALAN RIVERS, RICK Y.S. YI AND
                        AUGUST C. BELDEN