ERIC A. SEITZ
ATTORNEY AT LAW
A LAW CORPORATION

ERIC A. SEITZ          1412
LAWRENCE I. KAWASAKI  5820
DELLA A. BELATTI       7945
820 Mililani Street, Suite 714
Honolulu, Hawai'i  96813
Telephone:  (808) 533-7434
Facsimile:  (808) 545-3608

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| ROBERT SOUZA, | ) | CIVIL NO. CV 04-00535 DAE/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | PLAINTIFF'S MEMORANDUM IN |
| | ) | OPPOSITION TO DEFENDANTS' |
| CITY AND COUNTY OF | ) | MOTIONS FOR SUMMARY |
| HONOLULU; HAROLD | ) | JUDGMENT; CERTIFICATE OF |
| UEHARA, in his individual and | ) | SERVICE |
| official capacity; ALAN RIVERS, | ) | |
| in his individual and official | ) | |
| capacity; RICK S.Y. YI, in his | ) | |
| individual and offical capacity; | ) | |
| AUGUST C. BELDEN, in his | ) | |
| individual and official capacity; | ) | Hearing: |
| JEREMY HARRIS, in his official | ) |     Date:   November 28, 2007 |
| capacity as Mayor; LEE | ) |     Time:   2:00 p.m. |
| DONOHUE in his individual and | ) |     Judge:  Hon. Barry M. Kurren |
| official capacity as Police Chief; | ) | |
| TAVERN 515, INC. d.b.a. CLUB | ) | |
| YURAKUCHO; HARRY | ) | (Trial: March 8, 2008) |

NAKAKI; JOHN AND JANE              )
DOES 1-10; DOE                     )
PARTNERSHIPS 1-10; DOE             )
CORPORATIONS 1-10; and            )
OTHER DOES ENTITIES 1-10,          )
                                   )
                Defendants.        )
_____      )

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiff ROBERT SOUZA (hereinafter "Plaintiff"), by and through his attorneys hereby submits the following memorandum in opposition to: (1) Defendant City and County of Honolulu's Motion for Summary Judgment filed October 17, 2007; (2) Defendants August C. Belden, Alan Rivers, and Rick Y.S. Yi's Motion for Partial Summary Judgment filed October 26, 2007, and; (3) Defendant Harold Uehara's Motion for Partial Summary Judgment filed October 25, 2007.

I.    BACKGROUND FACTS

In the instant action, Plaintiff, alleges that on the evening of August 13, 2003, (1) he was assaulted by Defendant Uehara in the parking lot of Club Yuraku-Cho; (2) after striking back at Defendant Uehara in self-defense, he was physically restrained and assaulted by Defendants, and; (3) after being escorted back into the club under Defendants' restraint he was assaulted again by

Defendant Uehara.

On August 15, 2003, after seeing his doctor for treatment for injuries he had sustained on the evening of August 13, 2003,  Plaintiff made a complaint with the Honolulu Police Department about the conduct of officers on the evening of August 13, 2003.  Exhibit 1, attached to Plaintiff's Response to Defendants' Concise Statements of Fact in Support of Their Motions for Summary Judgment (hereinafter "Exhibit __"), at C-00001 - C-00007.

On September 9, 2003 Detectives Kaneshiro and Frederick, Internal Affairs, HPD, conducted a taped interview of Harry Nakaki, owner, Club Yuraku-Cho. Exhibit 2, at C-00142 - C-00170.  In that interview, although he had not been outside to see what had transpired in the parking lot, Exhibit 2, at C-00146, Harry Nakaki reported what he saw when Plaintiff was escorted back into the bar after the events in the parking lot as follows:

> A.    Yeah.  Well, Harold told me he wanted for talk to him.  And had, uhh, I guess the two ... two of Harold's off duty ... you know, the off duty guys was between Bobby and Harold so that there's no more incidents.
> Q.    Umm.
> A.    And to my understanding, is that uhh, Harold wanted ... you know, just kind a like made a left hand punch like, but maybe just went hit Bobby on his left. [...]
>
> A.    Well, I figure, uhh, my opinion, he went false-crack Harold two

3

times.  Harold fell on the concrete outside.  Then Harold went
kind a like, give 'em a love tap on his lips. [...]

Exhibit 2, at C-00149, C-00150.

On September 12, 2003, Detectives Kaneshiro and Frederick conducted a

taped interview of Plaintiff.  Exhibit 3, C-00102 - C-00121.  In his interview

Plaintiff reported that when he arrived at Club Yuraku-Cho at a little after 6:00

p.m. on the evening of August 13, 2003 four police officers, including Defendant

Uehara, were already there, and it appeared that Defendant Uehara was picking on

one of the other officers. Exhibit 3, at C-00104.  A little while later the officers

went outside to settle their dispute, Exhibit 3, at C-00105.  When he went outside

to go to the bathroom it appeared the officers were going to get into a fight so he

stopped to observe.  At that point, Defendant Uehara rushed up to him shouting

"what," bumped him in the chest and shoved him.  In response Plaintiff struck

Defendant Uehara who tripped on a parking curb and fell.  Exhibit 3, at C-00105.

At that point, Defendant Yi rushed up to him, pinned him against the wall and

started assaulting him although he was moving backwards, not resisting, and

explaining to Defendant Yi that Defendant Uehara had struck him twice.  Exhibit

3, at C-00105.  Plaintiff repeatedly demanded Defendant Yi let him go without

success and thereafter repeatedly demanded that if they weren't going to let him

4

go then they should let him go back into the bar.  Plaintiff was then escorted back into the bar with Defendant Rivers at his side.  Exhibit 3, at C-00105.  A few minutes later, with Defendant officers on either side of him, Defendant Uehara came rushing into the bar shouting obsenities.  While the two officers at his side had Plaintiff pinned against the bar, Defendant Uehara skipped up to him and struck him.  Exhibit 3, at C-00106.

On September 25, 2003, Internal Affairs closed Plaintiff's case due to Plaintiff's failure to submit a notarized statement of his complaint.

On November 21, 2003, Plaintiff submitted a notarized complaint attaching a copy of the transcript of his interview with Detectives Kaneshiro and Frederick on September 12, 2003.  Exhibit 4, C-00098 - C-00101.

On December 9, 2003, Defendant Alan Rivers submitted a written report responding to Plaintiff's allegations.  Exhibit 5, C-00317 - C-00319.  In his report, Defendant Rivers stated that he arrived at the club at about 2230 hours, i.e., 10:30 p.m., to attend a party arranged by Defendant Uehara to celebrate a fellow officer's trip to Japan the next day.  Exhibit 5, at C-00318.  Shortly thereafter Defendant Uehara and Defendant Belden got into an argument about work which seemed to aggravate Defendant Uehara.  When Defendants Uehara and Belden got up and walked outside, Defendant Rivers also got up to leave.  When they got

outside, he heard a scuffle behind him and when he turned around, he observed

Defendant Uehara on the ground holding his chin saying he had been punched,

and Defendant Yi attempting to shield Plaintiff from Defendant Uehara.  When

Rivers then went over to assist Defendant Yi he observed "an arm thrust over me

towards Souza and turned to see Sergeant Uehara."  Although he did not see any

contact, Defendant Rivers then guided Defendant Uehara away from Plaintiff and

escorted Plaintiff back into the bar.  Exhibit 5, at C-00318.

On December 17, 2003, Defendant August Belden submitted a written

report responding to Plaintiff's allegations.  Exhibit 6, C-00290 - C-00291.

Defendant Belden reported that he arrived at the bar at about 2250 hours, i.e.,

10:50 p.m., to attend a party thrown by Defendant Uehara for Officer Jason

Hendricks, who had a trip planned to Japan.  Later that evening Defendant Uehara

got annoyed with Defendant Belden about work related issues, and their

conversation began getting loud.  At that point Defendants Belden and Uehara

went outside to continue their discussion and Defendants Yi and Rivers followed.

As he was walking toward his car, Defendant Belden heard Defendant Yi

"shouting something to the effect of 'what do you want to get arrested?'"  When

he saw Defendant Yi restraining Plaintiff he approached Defendant Uehara who

was yelling that he had been false cracked.  When Defendant Uehara started to

approach Plaintiff Defendants Belden and Rivers escorted him back into the parking lot, and Defendant Rivers then took Plaintiff back into the bar. Defendant Belden and Defendant Yi stayed with Defendant Uehara after which Defendant Belden left for home. Exhibit 6, at C-00290 - C-00291. Defendant Belden also noted that Defendant Uehara "appeared intent on furthering an altercation." Exhibit 6, at C-00291.

On December 10, 2003, Defendant Rick Yi submitted a written report responding to Plaintiff's allegations. Exhibit 7, C-00346 - C-00346. In his report, Defendant Yi stated that he arrived at the club at 2250 hours, i.e., 10:50 p.m., to celebrate a going away party for fellow officers Hendricks and Villaflor. At some point Defendants Uehara and Belden went out to the parking lot to continue a discussion about Defendant Uehara's supervisory methods. After Defendant Yi had exited the bar he saw Plaintiff standing at the front door of the bar yelling some words which he could not recall toward Defendants Uehara and Belden. He then observed Defendant Uehara walk toward Plaintiff and tell him to mind his own business. When Defendant Uehara got about an arms length away from Plaintiff, he saw Plaintiff punch Defendant Uehara and Defendant Uehara fell to the ground. Defendant Yi then separated Plaintiff from Defendant Uehara by pushing Plaintiff, and Plaintiff immediately told him that he was defending

7

himself. "I told SOUZA few times, you want to get arrested, and you can't be

punching people like that." Defendant Yi also reported that "While I was

preventing SOUZA from doing further harm to Sergeant UEHARA, I felt

something brush over my right shoulder and realized it was an arm. The punch,

however, did not appeared (sic) to have made any contact with SOUZA. I turned

my head around and observed Sergeant UEHARA standing directly behind myself

and Officer RIVERS." Exhibit 7, at C-00346 - C-00347.

On December 10, 2003, Internal Affairs received a written statement from

Defendant Harold Uehara responding to Plaintiff's allegations. Exhibit 8, at C-

00122 - C-00124. In his report, Defendant Uehara, in relevant part, stated that on

the evening of August 13, 2003 he was on duty until 2145 hours, i.e., 9:45 p.m.

Earlier that day he invited the officers in his sector, Defendants Alan Rivers,

August Belden, and Rick Yi, inter alia, to a going away party for fellow officer,

Jason Hendricks, at Club Yuraku-Cho. Defendant Uehara subsequently arrived at

the club at 2215 hours, i.e., 1015 p.m. After a while he and Defendant Belden got

into a disagreement about his methods of supervising his subordinates and he told

Defendant Belden "I will continue to run the sector as I see fit and he shouldn't

tell me how to do my job and to mind his own business." The situation between

Uehara and Defendant Belden got tense thereafter, and Uehara told Defendant

Belden they should go outside to talk about this away from the others.  According to Defendant Uehara, when he was outside he observed Plaintiff standing on the sidewalk saying something to him which he couldn't understand.  When he approached Plaintiff and got a few feet away, Plaintiff lunged towards him and punched him in the jaw with both fists, and he fell to the ground.  Thereafter he saw Defendants Yi and Rivers restraining Plaintiff.  Defendant Uehara reports that "I told both Officers Rivers and Yi not to hurt the male [Plaintiff] as he is a retired police officer and may be intoxicated."  At that time Harry Nakaki came outside and asked what happened.  Defendant Uehara told Nakaki that he had been "false cracked."  A short while later Plaintiff appeared to have calmed down, and Defendant Rivers walked Plaintiff back into the bar.  Defendant Uehara reports that he then proceeded back into the bar to ask Plaintiff why he had punched him, but Nakaki told him that Defendant Rivers had taken Plaintiff into the kitchen area and they had left from there.  He then walked outside and saw Plaintiff and Defendant Rivers in the parking lot at which time Uehara got into his own car and went home.  Exhibit 8, C-0122 - C-00124.

On January 14, 2004, Detective Sugimito conducted a taped interview of Defendant Rick Yi.  Exhibit 9, C-00353 - C-00374.  In his interview, Defendant Yi described his efforts to restrain Plaintiff and the blow directed at Plaintiff from

behind him, Exhibit 9, at C-00359 - C-00367.  Defendant Yi reported that all he

could recall Defendant Uehara saying after he observed the blow directed at

Plaintiff from behind him was "you know he false cracked me."  Exhibit 9, at C-

00367.  Defendant Yi also could not recall Defendant Uehara ever telling him not

to hurt or punch Plaintiff because he was a retired officer.  Exhibit 9, at C-00367.

On January 14, 2004, Detective Sugimoto conducted a taped interview of

Defendant Alan Rivers.  Exhibit 10, C-00325 - C-00345.  In his interview

Defendant Rivers, in relevant part, described the events leading up to the

altercation between Plaintiff and Defendant Uehara in the parking lot and the blow

directed at Plaintiff from behind him, Exhibit 10, at C-00329 - C-00336.

Defendant Rivers reported that he never heard anyone say not to hurt or punch

Plaintiff, Exhibit 10, at C-00336.  He also reported that after escorting Plaintiff

back into the bar, Defendant Uehara never came back into the bar, and denied

anything happened inside the bar.  Exhibit 10, at C-00337 - C-00342.

On January 22, 2004, Detective Sugimoto conducted a taped interview of

Defendant Harold Uehara.  Exhibit 11, C-00130 - C-00141.  In his interview

Defendant Uehara denied ever telling Plaintiff to mind his own business or ever

even touching Plaintiff in the parking lot before Plaintiff punched him. Exhibit 11,

at C-00135.  He also reiterated his prior statement that when Defendant Yi was

10

restraining Plaintiff he told Defendant Yi not to hit or touch Plaintiff or do anything to Plaintiff physically. Exhibit 11, at C-00136 - C-00137. Defendant Uehara also reiterated his prior statement that he never attempted to strike Plaintiff while Defendants Yi and Rivers were restraining Plaintiff in the parking lot. Exhibit 11, at C-00137. He also denied trying to punch or touch Plaintiff inside the bar thereafter and denied even seeing Plaintiff inside the bar thereafter. Exhibit 11, at C-00139 - C-00140.

On January 22, 2004, Detective Sugimoto conducted a second taped interview of Harry Nakaki, the owner of Club Yuraku-Cho. Exhibit 12, C-00171 - C-00205. In that interview Nakaki described the events in the bar after the altercation in the parking lot, expanding on his prior statements about Defendant Uehara taking a swing at Plaintiff while Defendants Yi and Rivers were on either side of Plaintiff. Exhibit 12, C-00179 - C-00182, C-00184-C-00186, C-00191, C-00198.

On February 3, 2004, Detective Sugimoto conducted a taped interview of Defendant August Belden. Exhibit 13, C-00298 - C-00316. In this interview Defendant Belden reported that although he did not see the altercation between Defendant Uehara and Plaintiff in the parking lot, he heard Defendant Yi telling Plaintiff "what, do you wanna get arrested?" Exhibit 13, at C-00303. He also

reported that Defendant Uehara was angry and accusing Plaintiff of false cracking

him and that it appeared that Plaintiff was not resisting Defendant Yi's efforts to

restrain him.  Exhibit 13, at C-00304.  Defendant Belden denied hearing

Defendant Uehara say not to punch or retaliate against Plaintiff.  Exhibit 13, at C-

00306.  Defendant Belden also opined that Defendant Uehara appeared to be the

aggressor in all of this because he was agitated from their earlier conversation, and

he expanded his description of Defendant Uehara's efforts at furthering the

altercation with Plaintiff.  Exhibit 13, at C-00310, C-00315.

On March 7, 2007, Defendants took Plaintiff's deposition where he

reiterated his account of the events on the evening of August 13, 2003. Exhibit B,

attached to Defendant Uehara's motion for partial summary judgment, and

Defendant Citys August C. Belden, Alan Rivers, and Rick S.Y. Yi's motion for

partial summary judgment (hereinafter "Souza Depo.").

II.    ARGUMENT

    A.    Defendant City and County of Honolulu's Motion Should be Denied
on the Grounds that there are Questions of Material Fact as to Their
Liability for the Acts and/or Omissions of Defendant Officers Under
the Doctrine of Respondeat Superior.[1]

---

    1.    As Defendant City and County of Honolulu does not expressly limit its request for
summary judgment to its liability under Section 1983, for the purposes of this motion, Plaintiff's
response addresses its liability under state law for the tortious acts and/or omissions of the
individually named defendants.

It has long been held that the County is liable for the tortious acts of its agents and servants. Matsumura v. County of Hawaii, 19 Haw. 496 (1909); Orso v. City and County of Honolulu, 56 Haw. 241, 248 (1975). In order to recover from an employer for damages resulting from the torts its agents or servants, the acts complained of must have been committed within the scope of the agent or servant's employment. Abraham v. S.E. Onorato Garages, 446 P.2d 821, 50 Haw. 628, 50 Haw. 639 (1968); Costa v. Able Distributors, Inc., 653 P.2d 101, 2 Haw. App. 486 (1982).

There is evidence on the record showing that Defendants Harold Uehara, Rick S.Y. Yi, Alan Rivers, and August Belden (hereinafter "Defendant Officers") were acting within the course and scope of their employment as police officers of Defendant City and County of Honolulu.

Although Defendant Officers contend that they were off-duty, out of uniform, and attending a social gathering for a "friend" who was leaving the country the next day, such self-serving assertions are not sufficient to resolve a factual issue. Compare, Russell v. Noullet, 706 So.2d 540 (1998)(holding that an off-duty police officer attending a private party who attempted to break up a physical altercation between his brother and other guests by announcing he was a police officer, retrieving his gun and firing several shots in the air was acting

within the course and scope of his employment).

Here evidence on the record shows that the Defendant Officers were celebrating at Club Yuraku-Cho during their work hours.[2]  It is undisputed that Defendant Uehara had arranged the celebration and invited Defendants Yi, Rivers and Belden to attend, all of whom were subordinates working under Defendant Uehara, and that the celebration was staged for fellow Honolulu Police Officer Jason Hendricks.[3]

According to Plaintiff when he went outside and stopped to observe Defendants in the parking lot continuing an argument about police work that had begun earlier inside the club,[4] Defendant Uehara approached him aggressively,

---

2.      Per Plaintiff, when he arrived at Club Yuraku-Cho at about 6:00 p.m. Defendant Officers were already there.  Exhibit 3, at C-00104, C-00112, C-00117 - C-00118.

3.      See, Exhibit 8, at C-00122 (per Def. Uehara, "Officer Hendricks was leaving for Japan the next day and I asked the sector officers if they wanted to have a going away party for him.  They agreed and I asked them to meet at Club Yuraku-Cho located at 1200 College Walk."); Exhibit 7, at C-00346 (per Def. Yi, "On 08-13-03 at 2250 hours I went to a going away party for Officer Jason Hendricks at Club Yuraku-Cho, 1200 College Walk."); Exhibit 5, at C-00318 (per Def. Rivers, "On 8/13/03 at about 2230 hours Sergeant Uehara, along with Officer Jason Hendricks, Officer Ben Villaflor, Officer Rick Yi, Officer August Belden and myself were off duty and socializing at Club Yuraku-Cho.  Sergeant Uehara has arranged a small party celebrating Officer Hendricks planned trip to Japan."); Exhibit 6, at C-00290 (Per Def. Belden, "On August 8, 2003 at about 2250 hours I attended a party at Club Yuraku-Cho thrown by our supervisor, Sergeant Uehara for Officer Jason Hendricks.  Officer Hendricks had planned on a trip to Japan so Sergeant Uehara thought it would be nice to celebrate his trip.").

4.      Exhibit 3, at C-00105; Exhibit 6, at C-00290; Souza Depo., at 46- 65.

challenged him verbally, and shoved/struck Plaintiff with his chest.[5]  After

observing his sergeant, Defendant Uehara, being struck by Plaintiff and fall to the

ground outside the bar, Defendant Yi invoked his authority as a police officer by

threatening Souza with arrest and physically restraining him with the help of

Defendant Rivers in order to protect his supervisor, Defendant Uehara.

In his written report to Internal Affairs, Defendant Yi states:

> When Sergeant UEHARA was about arms length away, I
> observed SOUZA punch Sergeant UEHARA on his face with his left
> fist.  After Sergeant UEHARA was punched, Sergeant UEHARA
> immediately fell to his knees.  I separated SOUZA from Sergeant
> UEHARA by pushing SOUZA on his shoulder.  When I pushed
> SOUZA near the club Yuraku-Cho's wall, SOUZA immediately
> uttered that he was defending himself.  SOUZA related that he was
> sucker punched by UEHARA.  I informed SOUZA, I know what I
> observed.  **I informed SOUZA several times, you want to get
> arrested** and you can't be punching people like that.

[...]

**While I was preventing SOUZA from doing further harm to
Sergeant UEHARA**, [...]

Exhibit 7, at C-00347(Emphasis added); Exhibit 9, at C-00362("I didn't want to

say 'eh you know you punched by Sergeant [...] So you know I didn't have to

explain to him, I thought he knew of Harold was and Harold knew who he was.");

See also, Exhibit 13, at C-00303, Exhibit 6, at C-00290; Exhibit 10, at C-00331.

---

5.    Exhibit 3, at C-00104 - C-00105; Souza Depo., at 46-65.

Evidence on the record further shows that Plaintiff was assaulted by Defendant Uehara while being restrained by Defendants Yi and Rivers in the parking lot.

In his written report to Internal Affairs, Defendant Yi states:

> While I was preventing SOUZA from doing further harm to Sergeant UEHARA, I felt something brush over my right shoulder and realized it was an arm.  The punch, however, did not appeared (sic) to have made any contact with SOUZA.  I turned around and observed Sergeant UEHARA standing directly behind me.

Exhibit 7, at C-00347; see also, Exhibit 9, at C-00362 - C-00367.

In his written report to Internal Affairs, Defendant Rivers states:

> [...] While attempting to help Officer Yi calm down Souza, I observed an arm thrust over me towards Souza and turned to see Sergeant Uehara.  Although I did not see any contact, I then guided Sergeant Uehara away from Souza without incident to further diffuse the situation.

Exhibit 5, at C-00318; see also, Exhibit 10, at C-00333 - C-00335.

Defendant Yi reported that Plaintiff was not really resisting his efforts to move him away from Defendant Uehara,[6] and Defendant Belden reported that, although he did not see the initial physical altercation between Defendant Uehara and Plaintiff, when he observed Defendant Yi restraining Plaintiff, Plaintiff was

---

6.    Exhibit 9, at C-00361; Exhibit 13, attached hereto, at C-00304; Souza Depo., at 69-72.

compliant and was not resisting,[7] and that Defendant Uehara appeared to be the aggressor at that time.[8]

Under their continuing restraint Defendants escorted Plaintiff back into the bar where Defendant Uehara assaulted Plaintiff again. According to Harry Nakaki, the owner of Club Yuraku-Cho, after Plaintiff was escorted by Defendant Rivers back into the club,[9] Defendant Uehara also came back inside,[10] and while two Defendant officers were on either side of Plaintiff,[11] Defendant Uehara took another swing at Plaintiff.[12] See also, Souza Depo., at 73-79.

Plaintiff submits that Defendant City and County of Honolulu's motion should be denied as to its liability for the tortious acts of its employees because the evidence on the record creates a factual issue as to whether Defendants purported to act as police officers and thus were acting within the scope of their employment when Plaintiff was restrained by them and struck by

---

7.      Exhibit 13, at C-00304.

8.      Exhibit 13, at C-00309 - C-00310, C-00315.

9.      Exhibit 7, at C-00347; Exhibit 9, at C-00369; Exhibit 5, at C-00318; Exhibit 6, at C-00290; Exhibit 13, at C-00306.

10.     Exhibit 2, at C-00148 - C-00149.

11.     Exhibit 12, at C-00188.

12.     Exhibit 2, at C-00149 - C-00150; Exhibit 12, at C-00179 - C-00182, C-00184 - C-00186, C-00188 - C-00191, C-00195 - C-00201.

Defendant Uehara.

> B.    Defendants August C. Belden, Alan Rivers, Rick Y.S. Yi, and
>        Harold Uehara's Motions Should be Denied on the Grounds
>        that There are Questions of Fact as to Whether Their Acts
>        and/or Omissions were Committed "Under Color of State
>        Law."[13]

"A person acts under color of state law if he exercises power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir. 1997) cert. denied, 522 U.S. 996, 118 S.Ct. 559, 139 L.Ed.2d 401 (1997).

The Supreme Court has interpreted the phrase "under color of law" to include "under pretense of law." Screws v. United States, 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). A police officer's actions are under pretense of law where they are "in some way related to the performance of their official duties." Van Ort v. Estate of Stanewich, 92 F.3d 831, 838 (9th Cir. 1996); Vang v.

---

13.    As to Defendant officers' argument that claims against them in their official capacity should be dismissed as duplicative of the §1983 claims asserted against Defendant City and County of Honolulu, Plaintiff submits that as noted supra, Defendant City and County of Honolulu liable under state law for the tortious acts of Defendant officers within the scope of their official duties. Cf., Robinson v. Centene Corp/Nursewise, 2007 WL 2023480 (D.Ariz. 2007)(defendant employer may be held liable for acts performed in an official capacity under the theory of respondeat superior); Miller v. Maxwell's International, Inc., 991 F.2d 583 (9th Cir. 1991)(naming parties in their official capacity incorporates respondeat superior liability). To the extent that Defendant City and County otherwise consents to litigate its liability on this issue, Plaintiff does not object to the dismissal of these claims. Rule 15(b), F.R.C.P.

Toyed, 944 F.2d 476, 480 (9th Cir. 1991)("For conduct to relate to state authority, it must bear some similarity to the nature of the powers and duties assigned to the defendants.").

In Anderson v. Warner, 451 F.3d 1063 (9th Cir. 2006), the Court ruled that the actions of an off-duty law enforcement officer are "under color of state law" where (1) the officer's acts are committed while the officer is acting, purporting, or pretending to act in the performance of his or her official duties; (2) the officer's pretense of acting in the performance of his duties has the purpose of effect of influencing the behavior of others, and; (3) the challenged conduct is related in some meaningful way either to the officer's governmental status or to the performance of his duties. Id, at 1069-69.

Whether defendants acted under color of state law is a question of fact. See, e.g., Gritchen v. Collier, 254 F.3d 807, 813 (9th Cir. 2001); Lopez v. Dep't. of Health Servs., 939 F.2d 881, 883 (9th Cir. 1991)(per curiam); Howerton v. Gabica, 708 F.2d 380, 383 (9th Cir. 1983).

In the instant case, at all times pertinent hereto, Plaintiff knew or reasonably believed that Defendants were employed as police officers of the City and County of Honolulu. See, Exhibit 1, at C-00002; Exhibit 3, at C-00104; Souza Depo., at pp. 42-44. Although merely being identified as a police officer

does not, <u>alone</u>, transform that person's actions into acts committed under color of state law, <u>Cook v. Morrow</u>, 2007 WL 3022607 (N.D. Cal.), here there are additional reasons to support a finding that the officers acted in their official capacities.

In any other situation Plaintiff would have been entitled to defend himself against an assault or battery committed against him,  HRS §703-304(1),[14] however, once Defendants invoked their authority as police officers Plaintiff was prevented from exercising that right.  See <u>Terry v. Ohio</u>, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)(For the purposes of the Fourth Amendment, a seizure occurs when an officer, through some form of physical force or show of authority restrains the liberty of a citizen); <u>Florida v. Bostick</u>, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)  <u>United States v. Kim</u>, 25 F.3d 1426, 1430 (9th Cir. 1994)(a seizure occurs if, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.").  Accordingly, when Defendant Uehara fell to the ground outside

---

14.    HRS §703-304(1) provides:

Subject to the provisions of this section and of section 703-308, the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion.

the bar, and Defendant Yi physically restrained Souza under threat of arrest,[15]

Plaintiff arguably was seized under lawful authority and no longer could resist.

When Defendant Rivers went to assist Yi and subsequently assumed control of

Souza,[16] Rivers, too, was clearly acting "under color of law."  And since there also

is evidence that Defendants Yi and Rivers restrained Plaintiff for the purpose of

protecting their supervisor, Defendant Uehara,  and by doing so provided Uehara

an opportunity to assault Plaintiff outside the bar,[17] and again inside the bar,[18]  the

three Defendants may certainly have acted "under color of law," in causing

physical harm to Plaintiff.

Plaintiff submits that Defendant Uehara's motion should be denied

because there are certainly questions of fact as to whether he acted under "color of

state law."  See,  Vang v. Toyed, 944 F.2d 476 (9th Cir. 1991)(holding that

evidence showing that defendant used his government position to exert physical

control over plaintiffs in order to assault them is sufficient so establish an action

---

15.    Exhibit 7, at C-00347; Exhibit 9, C-00362; See also, Exhibit 6, at C-00290; Exhibit 13, at C-00303.

16.    Exhibit 10, at C-00331.

17.    Exhibit 5, at C-00318;  Exhibit 6, at C-00290; Exhibit 7, at C-00347; Exhibit 9, at C-00362 - C-00367; Exhibit 10, at C-00333 - C-00335; See also, Exhibit 13, at C-00303.

18.    Exhibit 2, at C-00148 - C-00150; Exhibit 5, at C-00318; Exhibit 6, at C-00290; Exhibit 7, at C-00347; Exhibit 9, at C-00369; Exhibit 12, at C-00179- C-00201; Exhibit 13, at C-00306; Souza Depo., at 73-79.

"under color of state law").

Defendants Yi and River's motion should be denied because there are questions of fact as to whether they acted under "color of state law" when they restrained Plaintiff thereby preventing Plaintiff from defending himself against Defendant Uehara's attacks.  Anderson v. Warner, 451 F.3d 1063 (9th Cir. 2006).

Defendant Belden's motion should be denied on the grounds that he failed to take any steps to protect Plaintiff from Defendant Uehara's attacks. Fantasia v. Kinsella, 956 F.Supp. 1409, 1414 (N.D.Ill. 1997)("An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under §1983 for his nonfeasance.").

Finally viewed in the light most favorable to Plaintiff, the evidence does not support Defendants' claim to qualified immunity.

Plaintiff's §1983 claims arise from the protections provided by the Fourth Amendment which guarantee citizens the right to be secure in their persons against unreasonable seizures.  Graham v. Conner, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  "The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them.  Tennessee v. Garner, 471 U.S. 1, 7-8, 105

S.Ct. 1694, 85 L.Ed.2d 1 (1985).  Where some force is justified, the amount

actually used may be excessive.  Santos v. Gates, 287 F.2d 846, 853 (9th Cir.

2002).  The question in all cases is whether the force was "objectively reasonable

in light of the facts and circumstances confronting" the arresting officers.

Graham, 490 U.S. at 397, 109 S.Ct. 1865 (internal quotation marks omitted).

        To determine whether a specific use of force was reasonable the court

must balance the nature and quality of the intrusion on the individual's Fourth

Amendment interests against the countervailing government interests at stake.

Factors relevant to this inquiry include, but are not limited to, the severity of the

crime at issue, whether the suspect poses an immediate threat to the safety of the

officers or others, and whether the suspect is actively resisting arrest or attempting

to evade arrest by flight.  Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th

Cir. 2007).  "[A] simple statement by an officer that he fears for his safety or the

safety of others is not enough; there must be objective factors to justify such a

concern.  In short, an officer's use of force must be objectively reasonable based

on his contemporaneous knowledge of the facts."  Deorle v. Rutherford, 272 F.3d

1272, 1281 (9th Cir. 2001)(reversing grant of qualified immunity to an officer

where the facts are sufficiently unclear as to what defendant officer believed or

feared - reasonable or not - that the determination must be made by a trier of fact).

Proper application of Fourth Amendment protection requires careful attention to the facts and circumstances of each case.  Graham v. Conner, supra, 490 U.S. 396.

Evidence on the record shows that Plaintiff was compliant and never resisted Defendants' attempts to separate him from Defendant Uehara,[19] and that Defendant Uehara appeared to be the aggressor at that time.[20]  Defendant officers have failed to meet their burden of proving that there are no questions of fact as to whether their conduct violated the Fourth Amendment when they subjected Plaintiff to continuing restraint and thereby provided the opportunity for Defendant Uehara to commit further assaults on Plaintiff.  Deorle v. Rutherford, 272 F.3d 1272, 1281 (9th Cir. 2001)(holding that where the evidence is contradictory, determinations bearing upon a claim of qualified immunity must be made by the trier of fact).

III.    CONCLUSION

For all of the reasons set forth above, this Court should deny Defendant City and County's Motion for Summary Judgment as to its liability under state tort law principles, and deny Defendants Uehara, Yi, Rivers, and Belden's motions for

/

---

19.    Exhibit 9, at C-00361, Exhibit 13, at C-00304.

20.    Exhibit 13, at C-00309 - C-00310, C-00315.

partial summary judgment on Plaintiff's §1983 claims.

DATED:     Honolulu, Hawai'i,  November 9, 2007         .


     /s/ Eric A. Seitz
ERIC A. SEITZ
LAWRENCE I. KAWASAKI
DELLA A. BELATTI

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| ROBERT SOUZA, | ) | CIVIL NO. CV 04-00535 DAE/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| CITY AND COUNTY OF | ) | |
| HONOLULU; HAROLD | ) | |
| UEHARA, in his individual and | ) | |
| official capacity; ALAN RIVERS, | ) | |
| in his individual and official | ) | |
| capacity; RICK S.Y. YI, in his | ) | |
| individual and offical capacity; | ) | |
| AUGUST C. BELDEN, in his | ) | |
| individual and official capacity; | ) | |
| JEREMY HARRIS, in his official | ) | |
| capacity as Mayor; LEE | ) | |
| DONOHUE in his individual and | ) | |
| official capacity as Police Chief; | ) | |
| TAVERN 515, INC. d.b.a. CLUB | ) | |
| YURAKUCHO; HARRY | ) | |
| NAKAKI; JOHN AND JANE | ) | |
| DOES 1-10; DOE | ) | |
| PARTNERSHIPS 1-10; DOE | ) | |
| CORPORATIONS 1-10; and | ) | |
| OTHER DOES ENTITIES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## CERTIFICATE OF SERVICE

   I DO HEREBY CERTIFY that one copy of the within was duly

served this date to the following at the address listed below:

CARRIE K.S. OKINAGA, ESQ.                    (Via CM/ECF)
D. SCOTT DODD, ESQ.
Department of the Corporation Counsel
530 South King Street, Room 110
Honolulu, Hawaii 96813
E-mail: dsdodd@honolulu.gov

Attorneys for Defendants
CITY AND COUNTY OF HONOLULU,
ALAN RIVERS, RICK S.Y. YI, and
AUGUST C. BELDEN


CARY T. TANAKA, ESQ.                         (Via CM/ECF)
DIANE K. AGOR-OTAKE, ESQ.
Suite 510, Fort Street Tower
745 Fort Street
Honolulu, Hawaii 96813
E-mail: carytanaka@aol.com

Attorneys for Defendant
HAROLD UEHARA

DATED: Honolulu, Hawaii,  November 9, 2007         .


                    /s/ Eric A. Seitz
                    ERIC A. SEITZ